# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

PRASHANTI ADIMULAM,

                 Plaintiff,              CASE NO. 16-12942

                                          HON. DENISE PAGE HOOD

v.

HENRY FORD HEALTH SYSTEM,

                 Defendants.

_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [#28] AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#29]

## I.    BACKGROUND

### A. Procedural Background

On August 12, 2016, Plaintiff Prashanti Adimulam ("Adimulan") brought this action against Defendant Henry Ford Health System ("HFHS"), alleging HFHS committed national origin discrimination in violation Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (Count I), national origin discrimination and retaliation in violation of the Elliot-Larsen Civil Rights Act (ELCRA), MCLA 37.2101 *et seq.*, MSA 3.548 (101) *et seq.*, (Count II and Count III), retaliation in violation of Michigan's Whistleblowers' Protection Act (WPA), MCLA 15.361 *et seq.*, MSA 17.428(1), *et seq.* (Count IV), and Intentional Infliction

1

of Emotional Distress under Michigan common law (Count V). (Doc # 1) On April 18, 2017, Adimulam filed an Amended Complaint adding a claim alleging HFHS retaliated against her in violation of Title VII (Count VI). Adimulam filed a second Amended Complaint adding a jury demand on September 28, 2017. (Doc # 24)

This matter is before the Court on Adimulam's Motion for Partial Summary Judgment on Adimulam's WPA unlawful retaliation claim against HFHS (Count IV), filed on November 27, 2017 (Doc # 28), and HFHS's Motion for Summary Judgment filed on November 28, 2017 (Doc # 29). HFHS filed a Response to Adimulam's Motion on December 18, 2017. (Doc # 31) Adimulam filed a Response to HFHS's Motion on December 18, 2017. (Doc # 32) Adimulam filed a Reply on January 8, 2018. (Doc # 34) HFHS filed a Reply on January 12, 2018. (Doc # 36)

For the reasons set forth below, Adimulam's Motion for Partial Summary Judgment is **DENIED**. HFHS's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

### B. Factual Background

Adimulam is a licensed pharmacist in Michigan. (*Id.*) She was hired as a Pharmacy Coordinator by HFHS during December 2008. (*Id.*) Adimulam was assigned as the Pharmacy Coordinator at HFHS's Farmington ambulatory retail pharmacy. (*Id.*) Steve Duda ("Duda") was Adimulam's immediate supervisor when she was hired. (Doc # 29, Pg. 12) Duda reported to Dan Kus ("Kus"), who was the

Vice-President of Ambulatory Pharmacy Services. (*Id.*) Adimulam's responsibilities included overseeing staff pharmacists at the Farmington location and enforcing HFHS policies. (*Id.*) Adimulam was named Employee of the Year in 2011. (Doc # 28, Pg. 12) She also received positive employment reviews in 2011, 2012, 2013, and 2014. (*Id.*) Plaintiff Adimulam is a woman who was born in India. She immigrated to the United States in 1997, and became a U.S. citizen in 2015. (Doc # 28, Pg. 11)

During September 2015, Adimulam supervised three employees named Tammi, Jackie, and Fred. (*Id.*) Adimulam alleges that Tammi and Jackie are Caucasian women, and Fred is an African-American man. (*Id.*) In early September 2015, Adimulam alleges that Tammi began calling her "mocha vanilla" and Fred "mocha chocolate," as a reference to their respective skin colors. (*Id.*) Adimulam reported the discriminatory comments to Duda, who was still her supervisor. (*Id.*) Adimulam alleges that Tammi and Jackie responded by notifying Duda of policy infractions committed by Adimulam. (*Id.*)

Adimulam does not dispute committing several HFHS policy violations. Adimulam allegedly admitted to leaving work during her lunch break without clocking out of work, and allowing her staff members to do the same. (Doc # 29, Pg. 13) On September 28, 2015, an HFHS employee discovered that the cash register at the pharmacy managed by Adimulam was short $20.00 from the previous

day. (*Id.*) Adimulam allegedly removed $20.00 from petty cash to cover the shortage. (*Id.*) The petty cash on hand was allegedly $439. (*Id.*) Under HFHS policy, the maximum amount of petty cash on hand should have been no more than $300. (*Id.*) Adimulam allegedly only required the petty cash to be counted once per month, while HFHS required petty cash to be counted daily. (*Id.*) Adimulam also violated HFHS policy by permitting her staff to ring up their own pharmacy purchases, and by using her cell phone in working areas. (*Id.* at Pg. 13-14) Adimulam also assigned a part-time employee to address staff issues, despite being instructed to talk to her staff about proper and improper work conduct. (*Id.* at Pg. 14)

Duda met with Adimulam, and she admitted to committing the alleged policy violations. (*Id.*) Adimulam allegedly expressed a belief that two of her staff members reported the policy violations to Duda because one of them was to be fired, and the other wanted Adimulam's position. (*Id.*) HFHS claims that several staff members reported that Adimulam bullied them on occasion. (*Id.*)

Adimulam was suspended by HFHS on September 28, 2015, and subsequently fired on October 1, 2015. (Doc # 28, Pg. 12-13) Adimulam appealed her termination through HFHS's Alternative Dispute Resolution Policy. (Doc # 29, Pg. 15) Through the appeal process, Adimulam eventually met with John Polanski ("Polanski"), the President and CEO of the HFHS Community Care Services Group.

(*Id.*)  This was allegedly the first stage at which Adimulam inquired whether her nationality was a factor in the decision to terminate her employment with HFHS. (*Id.*)  Adimulam also asked why the two staff members who reported her conduct were not terminated.  (*Id.*)

Polanski decided to rescind the decision to fire Adimulam.  Polanski changed her termination to a five-day suspension.  (Doc # 29, Pg. 16)  Polanski also demoted Adimulam from her position as a Pharmacy Coordinator to a new position as a Staff Pharmacist based on his determination that Adimulam should not be in a leadership position.  (Doc # 28, Pg. 13)  Despite her demotion, Aimulam did not receive a salary reduction.  (Doc # 29, Pg. 16)  Polanski was allegedly unaware that Adimulam had previously complained of discrimination based on her national origin when he made the decision to demote Adimulam.  (Doc # 28, Pg. 14)

Adimulam was assigned as a Staff Pharmacist at the HFHS Northwest Detroit Ambulatory Pharmacy ("DNW"), where she reported directly to Pharmacy Supervisor Mina Sedarous ("Sedarous").  (*Id.*)  Sedarous reported directly to Samer "Sam" Youssef ("Youssef").  (Doc # 29, Pg. 17)  While working at DNW, Adimulam was allegedly scheduled to work a shift at the Center for Senior Independence ("CSI").  (*Id.*)  Adimulam refused to work at the CSI.  (*Id.*)

On December 23, 2015, Adimulam sent an email to Laura Sudo, Kus and Polanski to challenge the facts surrounding her previous suspension.  (*Id.*)

Adimulam allegedly claimed she was subject to discrimination once again.  (Doc # 28, Pg. 14)  On January 20, 2016, Adimulam filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging national origin discrimination.  (Doc # 28, Pg. 15)  Polanski became aware Adimulam filed her EEOC claim.  (*Id.*)  On February 4, 2016, Polanski revoked Adimulam's five-day suspension, but refused to rescind Adimulam's demotion to restore Adimulam to her previous position as a Pharmacy Coordinator at the Farmington location.  (*Id.*)

Adimulam allegedly complained to Sedarous and Youssef that the narcotics log at DNW was maintained in a sloppy and unlawful manner.  (Doc # 28, Pg. 15-16)  Adimulam was also concerned that DNW filled questionable prescriptions, and about directives she received from Sedarous to fill prescriptions that Adimulam felt should not be filled.  (*Id.*)  DNW allegedly fills approximately 1500-2000 prescriptions per week.  Adimulam allegedly filled hundreds of prescriptions while working at DNW.  (*Id.*)  Adimulam refused to fill some patient prescriptions and received several patient complaints.

On February 16, 2016, a patient who went to DNW contacted HFHS's corporate offices to complain about her interaction with Adimulam.  (Doc # 29, Pg. 18-19)  The patient allegedly complained of poor patient care and inadequate costumer service.  (*Id.* at Pg. 19)  The patient reported that the manufacturer of her generic medication was changed, but there was no indication of the change on the

pill bottle or bag.  (*Id.*)  Adimulam allegedly stated DNW did not have the medication in stock and gave the patient a list of other HFHS locations she could contact to check the availability of the medication (collectively, the "Manufacturer Patient Complaint").  (*Id.*)

Sedarous expressed concern that Adimulam did not follow HFHS policies while servicing the customer, and asked Adimulam questions about the incident. (*Id.*)  Sedarous also expressed concern that the complaint was the third patient complaint DNW received regarding Adimulam's conduct within the previous week. (*Id.*)  Adimulam allegedly used the word "addict" while working on another patient's prescription (the "Addict Patient Complaint").  Another complaint allegedly came from a caregiver who reported feeling threatened by Adimulam's comments about not getting the caregiver's mother weekly blister packs at DNW (the "Blister Pack Patient Complaint"). (*Id.*)  Sedarous allegedly offered help and training to avoid patient issues in the future.  (*Id.*)

Adimulam responded to Sedarous, acknowledging that she had a "lapse of judgment" with respect to the Manufacturer Customer Complaint.  (*Id.*)

Adimulan denied any wrongdoing with respect to the Addict Patient Complaint and the Blister Pack Patient Complaint. (*Id.*)  Adimulam was not disciplined following any of these complaints.  (*Id.*)

On February 26, 2016, Adimulam emailed Sedarous objecting to his direction that Adimulam fill a prescription for a patient Adimulam suspected was a drug abuser. (Doc # 28, Pg. 17-18) The patient's doctor sent an electronic prescription for a thirty-day supply of Hydrocodone ("Norco"), a narcotic. (Doc # 29, Pg. 20) HFHS alleges the customer was accustomed to having a 90-day supply, but his regular doctor was on vacation. (*Id.*) The patient wanted to have a second prescription for Norco filled. Adimulam claimed she would have a 30-day supply available for the patient on February 29, 2016. (*Id.* at Pg. 21)

Adimulam allegedly learned that the patient had a dispute with his clinic and that the patient was administratively discharged from the clinic as a result. (*Id.*) Based on this information, Adimulam refused to fill the 30-day Norco prescription on February 29, 2016. (*Id.*) Sedarous expressed concern about Adimulam potentially lying to the patient. (*Id.*) At some point during their exchange, Adimulam informed Sedarous, Polanski, and the HFHS human resources department that, if HFHS compelled her to fill prescriptions she believed she should refuse as a matter of law, she would file a report with the United States Drug Enforcement Agency ("DEA"). (Doc # 28, Pg. 18) Youssef intervened and stated that the decision whether to fill the prescription was a matter of professional judgment, and neither Adimulam nor Sedarous was incorrect. (*Id.*) Youssef

subsequently met with Sedarous, and Sedarous indicated that he would not force Adimulam to fill prescriptions. (*Id.*)

On April 19, 2016, Adimulam and her peer pharmacists refused to fill a prescription for controlled substances due to the erratic behavior of the patient. (*Id.*) On April 28, 2016, Adimulam and her peer pharmacists called a patient's physician's office and refused to fill a prescription for controlled substances due to a suspicion the prescription was fraudulent. (*Id.* at Pg. 19) The suspicion was later confirmed to be true. (*Id.*)

On May 2, 2016, Adimulam suspected that a 28-year-old patient may be abusing her monthly prescription for 180 tablets of Norco, and 120 tablets of Soma, a muscle relaxer. (*Id.*) A short time after the patient received her prescription refill of 180 tablets of Norco, the patient called DNW to report that she was shorted 10 pills. (*Id.*) Adimulam allegedly checked the inventory and counted the tablets, and determined that the patient was not shorted any pills. (*Id.*) HFHS claims that Adimulam never counted the pills. (Doc # 29, Pg. 23, ¶ 68)

Later, the pharmacy technician allegedly informed Adimulam that the patient routinely asked for early refills and once brought two other people who had presented questionable prescriptions for Norco that DNW refused to fill. (*Id.*) Adimulam claims she checked the "patient notes" on the patient and her prescriptions kept in HFHS's computer system. (*Id.*) Adimulam noted that, on

March 1, 2016, pharmacist Jillian Sharfner made an entry instructing other pharmacists to stop filling the patient's prescriptions for Norco. (*Id.* at Pg. 20)

Adimulam called Sedarous and informed him that Adimulam would contact the patient's doctor to advise the doctor that DNW would not longer fill the patient's prescriptions for controlled substances. (*Id.*) Sedarous allegedly approved of the plan. (*Id.*) On May 2, 2016, Adimulam left a message with patient's doctor's answering service. (*Id.*) On May 3, 2016, Adimulam spoke with the doctor's nurse and explained that DNW would no longer fill the patient's prescriptions for controlled substances. (*Id.* at Pg. 20-21) HFHS alleges that Adimulam informed the doctor's office that DNW would no longer fill the patient's prescriptions, effectively resulting in the patient's administrative discharge from DNW's pharmacy services (the "Administrative Discharge Patient Complaint"). (Doc # 29, Pg. 23, ¶ 69) On the same day, the patient called DNW to report that she found the missing ten pills. (Doc # 28, Pg. 22)

On May 5, 2016, the doctor's office contacted HFHS to inquire why HFHS would no longer fill any of the patient's prescriptions. (*Id.*) Adimulam alleges that Sedarous denied having knowledge of the incident, and all her supervisors objected to her decision to refuse to fill prescriptions for the patient. (*Id.*)

On May 9, 2016, Adimulam allegedly adjusted the narcotic log book and another HFHS database to reflect an adjustment of 10 tablets without verifying the count or validating a reason for making the adjustment. (Doc # 29, Pg. 23, ¶ 70)

On May 5, 2016, Adimulam and her peer pharmacists refused to fill a prescription for controlled substances. (Doc # 28, Pg. 23) In an email to HFHS, Sedarous noted that no pharmacist wanted to fill the patient's prescriptions. (*Id.*) HFHS claims that Adimulam refused to fill the prescriptions because another doctor in the patient's doctor's office had been charged with fraudulent prescriptions, and Adimulam falsely told the patient that DNW did not have the medication in stock (the "Legitimate Prescription Patient Complaint"). (Doc # 29, Pg. 22, ¶ 61) The patient contacted Youssef to complain about Adimulam. (*Id.* at ¶ 64)

At some point, Sedarous directed Adimulam to complete RadicaLogic ("RL") reports with respect to the Legitimate Prescription Patient Complaint and the Administrative Discharge Patient Complaint. (*Id.* at Pg. 24) HFHS considers the RL reports quality assurance documents that record positive and negative incidents. (*Id.*) HFHS policy requires RL reports to be completed within 24-hours of the incident. (*Id.*) Adimulam never completed the RL reports. (*Id.*)

On or around May 11, 2016, Sedarous came to DNW and told Adimulam to clock out and go home without explanation. (Doc # 28, Pg. 23; Doc # 29, Pg. 24) On May 13, 2016, Adimulam drafted a memorandum to HFHS's human resources

department explaining and defending some of her past conduct. (Doc # 28, Pg. 23) Also on May 13, 2016, Adimulam called Laura Sudo ("Sudo"), HFHS's Human Resources Business Partner, and advised that she intended to file a report for unlawful conduct against HFHS with the State of Michigan and the DEA. (*Id.*) On May 18, 2016, Adimulam attended a meeting with Sedarous, Youssef, and Sudo to discuss Adimulam's employment status. (Doc # 29, Pg. 25) Also on May 18, 2016, Adimulam reported HFHS's alleged unlawful pharmacy practices, and that she was allegedly being disciplined for following pharmacy regulations, to the Michigan Pharmacy Association and the State of Michigan's Office of the Attorney General. (Doc # 28, Pg. 24)

On May 19, 2016, Adimulam met with Youssef. (*Id.*) Youssef acknowledged Adimulam's threat to file a report with the DEA and the State of Michigan. (*Id.*) Youssef stated:

> … And I'm not sure if it's going to help anybody and I don't want to see anybody getting hurt or, or stuff you have to report to the DA (sic) or the State on any pharmacist's license ….

(Doc # 28-32, Pg. 2-3)

Adimulam was terminated later that day. (Doc # 28, Pg. 24) Adimulam's internal appeal of her termination was denied. (*Id.*) The State of Michigan Office of the Attorney General referred Adimulam's complaint to the DEA. (*Id.*) Adimulam participated in the DEA's investigation and an interview with the Federal

Bureau of Investigation ("FBI"). (*Id.*) The investigation was still pending at the time these Motions were filed. (*Id.* at Pg. 25)

On August 17, 2016, Sudo filed a charge against Adimulam with the Allegation Unit of the Michigan Department of Licensing and Regulatory Affairs Bureau of Health Care Services. (*Id.*) On October 11, 2016, Adimulam filed a claim with the EEOC, alleging that her termination on May 19, 2016 was retaliation for filing her first EEOC claim on January 20, 2016. (*Id.*) On October 19, 2016, the Michigan Department of Licensing and Regulatory Affairs Bureau of Health Care Services provided correspondence stating that Adimulam did not commit a violation of the Public Health Code and closed the file. (Doc # 28, Pg. 25)

II.    **ANALYSIS**

   **A. Standard of Review**

The Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986). A fact is material if it could affect the outcome of the case based on the governing substantive law. *Id.* at 248. A dispute about a material fact is genuine if, on review of the evidence, a reasonable jury could find in favor of the nonmoving party. *Id.*

The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the nonmoving party must "go beyond the pleadings and … designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. The Court may grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Conclusory allegations do not create a genuine issue of material fact which precludes summary judgment." *Johari v. Big Easy Restaurants, Inc.*, 78 F. App'x 546, 548 (6th Cir. 2003).

When reviewing a summary judgment motion, the Court must view the evidence and all inferences drawn from it in the light most favorable to the nonmoving party. *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986). The Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of

the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

**B. Adimulam's Motion for Partial Summary Judgment**

Adimulam moves for partial summary judgment on her WPA retaliation claim against HFHS (Count IV). Adimulam argues that the facts establish a prima facie case for retaliation under the WPA that cannot be rebutted by HFHS. (Doc # 28, Pg. 30-34) HFHS argues Adimulam cannot establish a prima facie case under the WPA, and that all of HFHS's actions were based on legitimate, non-discriminatory reasons. (Doc # 31, Pg. 21-30)

The Whistleblowers' Protection Act ("WPA") provides:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body . . . .

M.C.L. § 15.362. The WPA must be liberally construed in favor of the persons it was intended to benefit. *Phinney v. Perlmutter*, 222 Mich.App. 513, 546 (1997).

A plaintiff may prove a retaliation claim under the WPA by direct or circumstantial evidence. *Sniecinski v. Blue Cross Blue Shield of Mich.*, 469 Mich. 124, 132 (2003). In cases involving circumstantial evidence of retaliation, a plaintiff must proceed under the burden-shifting framework established in *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the burden-shifting framework, a plaintiff is allowed to present a rebuttable prima facie case from which the trier of fact could determine that the plaintiff was subject to unlawful retaliation under the WPA. *Henry v. City of Detroit*, 234 Mich.App. 405, 409 (1999). Adimulam has presented circumstantial evidence of unlawful retaliation.

A plaintiff may establish a prima facie case by demonstrating that: (1) she was engaged in a protected activity as defined by the Act; (2) the defendant took an adverse employment action against the plaintiff; and (3) a causal connection exists between the protected activity and the adverse employment action. *Debano-Griffin v. Lake Cty.*, 493 Mich. 167, 175 (2013). If the plaintiff can establish a prima facie case, the employer must come forward with a legitimate reason for the adverse employment action. If "the plaintiff fails to show that a reasonable fact-finder could still conclude that the plaintiff's protected activity was a 'motivating factor' for the employer's adverse action," the employer is entitled to summary judgment. *Id.* at 176 (internal citations omitted). The plaintiff must produce evidence that not only "raise[s] a triable issue that the employer's proffered reason was pretextual, but that it was a pretext for [unlawful retaliation]." *Id.* (quoting *Hazle v. Ford Motor Co.*, 464 Mich. 456, 465-66 (2001)).

"'Protected activity' under the WPA consists of (1) reporting to a public body a violation of a law, regulation, or rule; (2) being about to report such a violation to

a public body; or (3) being asked by a public body to participate in an investigation." *Chandler v. Dowell Schlumberger Inc.*, 572 N.W.2d 210, 212 (Mich. 1998). Adimulam asserts that she engaged in a protected activity under the WPA by informing her supervisors of her intention to file a report with the State of Michigan and the DEA regarding HFHS's alleged unlawful practices on February 26, 2016. Adimulam also verbally threatened to file a complaint on May 13, 2016 while speaking to Sudo. In addition, Adimulam filed her report with the Michigan Pharmacy Association and Michigan's Office of Attorney General on May 18, 2016, after she was sent home but before she was formally terminated by HFHS.

HFHS does not dispute whether Adimulam engaged in a protected activity or whether she suffered an adverse employment decision. HFHS contends that Adimulam cannot establish a causal connection for her WPA retaliation claim. To show causation, a plaintiff must show that "[her] participation in the protected activity led to the adverse employment action." *Truman v. Jackson, City of*, No. 13-13446, 2016 WL 5661576, at *10 (E.D. Mich. Sept. 30, 2016) (citing *Robinson v. Radian, Inc.*, 624 F. Supp. 2d 617, 635 (E.D. Mich. 2008) (quoting *Jones v. City of Allen Park*, 167 Fed.Appx. 398, 406 (6th Cir. 2006)) (noting the question in retaliation cases is whether the employer would have reached the same decision even if the plaintiff had not engaged in protected conduct). Additionally, a plaintiff must show "something more than a temporal connection between protected conduct and

an adverse employment action." *Cooney v. Bob Evans Farms, Inc.*, 645 F. Supp. 2d 620, 631 (E.D. Mich. 2009), aff'd, 395 Fed.Appx. 176 (6th Cir. 2010).

Adimulam relies on the timing of events. Adimulam asserts, "[c]leary, [her complaint with the Michigan Pharmacy Association and the State of Michigan's Office of Attorney General were] a consideration just hours before Plaintiff's May 19, 2016 termination when Yousef(sic) acknowledged the threat." (Doc # 28, Pg. 32) Adimulam bases this conclusion partly on Youssef's statement ". . . I'm not sure if it's going to help anybody and I don't want to see anybody getting hurt or, or stuff you have to report to the DA (sic) or the State on any pharmacist's license . . . ." (Doc # 28-32, Pg. 2-3) Adimulam claims that is evidence her complaints regarding HFHS's unlawful pharmacy practices were considered before HFHS decided to terminate her.

HFHS contends that Youssef made that statement because he was expressing concern about HFHS filing a report with the State of Michigan against Adimulam. HFHS notes that Adimulam threatened to file a complaint with the DEA *if* she was forced to fill a prescription against her professional judgment.[1] (*see* Doc # 28, Pg. 18) Adimulam has not provided any evidence that she was ever compelled to fill a prescription against her will.

---

[1] This is a referencing the Adimulam's threat to HFHS made on February 26, 2016.

HFHS also argues that temporal proximity alone is insufficient to establish a causal connection for a WPA claim. "[A] plaintiff must show 'something more than a temporal connection between protected conduct and an adverse employment action.'" *Truman v. City of Jackson*, No. 13-13446, 2016 WL 5661576, at *10 (E.D. Mich. Sept. 30, 2016) (D. Page Hood, J.) (citing *Cooney v. Bob Evans Farms, Inc.*, 645 F. Supp. 2d 620, 631 (E.D. Mich. 2009), aff'd, 395 Fed.Appx. 176 (6th Cir. 2010)). HFHS highlights that Adimulam was never disciplined after receiving patient complaints nor after threatening to file claims against HFHS while she worked at DNW. Viewing the facts in the light most favorable to HFHS, there is a question of fact as to whether Adimulam's threats to file a complaint against HFHS factored into the decision to terminate her.

HFHS argues that Adimulam made no mention of pretext in her Motion for Partial Summary Judgment. HFHS indicated that Adimulam was discharged for HFHS policy violations she committed in connection with the Legitimate Prescription Patient Complaint and the Administrative Discharge Patient Complaint. (Doc # 29-23) The policy violations provide legitimate, nondiscriminatory reasons for Adimulam's termination.

Even if Adimulam can establish a prima facie case for retaliation under the WPA, she must establish that HFHS's stated reasons for her termination were pretext for unlawful retaliation. Under Michigan law, a plaintiff can establish pretext by

showing that the stated nondiscriminatory reasons for the adverse decision (1) had no basis in fact, (2) were not the actual factors motivating the decision, or (3) were insufficient to justify the decision. *Dubey v. Stroh Brewery Co.,* 185 Mich.App. 561, 565–566, 462 N.W.2d 758 (1990).

Adimulam did not address pretext in her Motion for Partial Summary Judgment. Adimulam did, however, address pretext in her Reply to HFHS's Response. Adimulam asserts that HFHS's stated reasons for her termination have changed over time, which is evidence that the stated reasons are pretext for retaliation.

To support her assertion, Adimulam directs the Court to several exhibits: (1) Exhibit 32 (Doc # 28-33); (2) Exhibit 40 (Doc # 34-2); (3) Exhibit 41 (Doc # 34-3); (4) Exhibit 42 (Doc # 34-4); and (5) Exhibit 43 (Doc # 34-5). Each exhibit provides different information regarding the decision to fire Adimulam. Four of the five exhibits, however, explicitly state Adimulam was fired in part because she failed to properly follow up on the Administrative Discharge Patient Complaint and for failure to complete the RL report for the incident. The exhibit that does not include that statement is a summary of CEO Polanski's investigative findings in response to Adimulam's claims regarding the Administrative Drug Patient Incident.

Adimulam claims that the complaint HFHS filed against her on August 17, 2016, with the Allegation Unit of the Michigan Department of Licensing and

Regulatory Affairs Bureau of Health Care Services, is further evidence of pretext. The complaint states that "[Adimulam] contacted a physician's office to instruct them that the Henry Ford Pharmacy would not fill prescriptions for narcotics for a patient" without authorization from management. The statement is materially different from the stated reasons for termination HFHS consistently provided. That complaint, however, is unrelated to the decision to terminate Adimulam. HFHS filed the complaint against Adimulam after she commenced this action. It has no bearing on HFHS's decision to terminate Adimulam several months prior. Viewing the facts in the light most favorable to HFHS, Adimulam cannot establish pretext for her retaliation claim.

HFHS contends that the allegations of WPA violations which allegedly occurred prior to May 14, 2016 are time-barred. Adimulam's claim for retaliation under the WPA arises from HFHS's decision to terminate her employment on May 19, 2016. HFHS's argument based the statute of limitations under MCL 15.363(1) is meritless.

HFHS argues that summary judgment should be granted regarding Adimulam's WPA retaliation claim. Adimulam alleges HFHS retaliated against her because she participated in a government investigation regarding suspected violations committed by HFHS. (Doc # 24, Pg. 11, ¶ 70) This allegation is unsupported by the facts provided. Similarly, Adimulam alleges that HFHS

retaliated against her because she reported suspected violations of law committed by HFHS to the State of Michigan and the federal government. That allegation is unsupported. Adimulam made her report to the state on May 18, 2016. Her employment was formally terminated on May 19, 2016. None of the evidence provided suggests that anyone at HFHS knew Adimulam reported HFHS's alleged unlawful conduct to state and federal authorities before she was effectively terminated.

There are genuine issues of material fact as to whether Adimulam can establish a prima facie case for retaliation under the WPA. In addition, Adimulam has failed to provide facts sufficient to support her claim that HFHS's legitimate nondiscriminatory reasons for terminating her employment were pretext for retaliation.

Adimulam's Motion for Partial Summary Judgment on her WPA retaliation claim against HFHS is **DENIED**.

## C. HFHS's Motion for Summary Judgment

### 1. *Retaliation Under the WPA*

HFHS argues that it is entitled to summary judgment on Adimulam's retaliation claim under the WPA. HFHS presents the same facts and arguments it provided in its Response (Doc # 31) to Adimulam's Motion for Partial Summary Judgment (Doc # 28). Adimulam also provides the same arguments presented in her

Motion for Partial Summary Judgment. HFHS does not challenge whether Adimulam engaged in a protected activity under the WPA, or whether she suffered an adverse employment decision.

HFHS argues that Adimulam cannot establish a prima facie case for retaliation because there was not a causal connection between Adimulam's threats and the decision to fire her. In addition, HFHS argues that Adimulam cannot establish that HFHS's reasons for terminating Adimulam were pretext for retaliation.

As stated above,[2] the causal connection inquiry turns on an interpretation of the temporal connection between Adimulan's report against HFHS to state authorities, and how one interprets Youssef's comment to Adimulam stating, ". . . I'm not sure if it's going to help anybody and I don't want to see anybody getting hurt or, or stuff you have to report to the DA (sic) or the State on any pharmacist's license . . . ." (Doc # 28-32, Pg. 2-3) That comment came after Adimulam threatened to report HFHS to state and federal authorities twice.

HFHS argues, however, that Michigan courts have determined that proving the plaintiff was engaged in a protected activity does not end the causation inquiry. *See Shallal v. Catholic Soc. Servs. of Wayne Cty.*, 455 Mich. 604, 621 (1997). "[A] plaintiff is precluded from recovering under a whistleblower statute when the employee acts in bad faith." *Id.* (citing *Melchi v. Burns Int'l Security Services, Inc.,*

---

[2] See Section II.B.

597 F.Supp. 575 (E.D. Mich., 1984); *Wolcott v. Champion Int'l Corp.,* 691 F.Supp. 1052 (W.D. Mich., 1987)).  The plaintiff's motivation must be to inform the public of important matters of public concern, not vindictiveness.  *Id.*  A plaintiff cannot use the WPA as a shield to prevent being terminated.

Adimulam threatened to report HFHS to federal authorities on at least two occasions.  Adimulam threatened HFHS as a method to refuse filling the prescription of a patient.  Later, during May 2016, Adimulam threatened to report HFHS to federal and state authorities if they chose to take an adverse employment action against her.  Adimulam's threats could support a finding of vindictiveness.  *See Shallal v. Catholic Soc. Servs. of Wayne Cty.*, 455 Mich. 604, 622 (1997) ("[B]ecause she used the threat of reporting defendant to force him to allow her to keep her job, no reasonable juror could conclude there was a causal connection between her firing and the protected activity.").

Adimulam argues that HFHS's inconsistent explanations for why she was fired establishes that those reasons were pretext for unlawful retaliation under the WPA.  HFHS argues that Adimulam cannot provide any evidence of pretext.  Adimulam directs the Court to several exhibits:  (1) Exhibit 32 (Doc # 28-33); (2) Exhibit 40 (Doc # 34-2); (3) Exhibit 41 (Doc # 34-3); (4) Exhibit 42 (Doc # 34-4); and (5) Exhibit 43 (Doc # 34-5).  Each exhibit provides different information regarding the decision to fire Adimulam.  Four of the five exhibits, however,

explicitly state Adimulam was fired in part because she failed to properly follow up on the Administrative Discharge Patient Complaint and for failure to complete the RL report for the incident. The exhibit that does not include that explanation is a summary of CEO Polanski's investigative findings in response to Adimulam's claims regarding the Administrative Drug Patient Incident. Under Michigan law, varying or conflicting reasons provided for an adverse employment decision can serve to disprove non-retaliatory reasons provided by an employer. *See Tackett v. Grp. Five Mgmt. Co.*, No. 296805, 2011 WL 6119289, at *6 (Mich. Ct. App. Dec. 8, 2011) (finding that varying or conflicting reasons being given for why an employee was terminated tends to disprove the non-retaliatory reasons presented by the employer). Viewing the facts in the light most favorable Adimulam, the inconsistent explanations given, considered in connection with Youssef's statement, provide a basis for a reasonable jury to find pretext for retaliation.

There are questions of material fact that could allow Adimulam to establish a *prima facie* case of unlawful retaliation under the WPA. HFHS's Motion for Summary Judgment on Adimulam's WPA retaliation claim against HFHS is **DENIED**.

## 2. *Title VII and ELCRA National Origin Discrimination*

The Sixth Circuit reviews claims of discrimination brought under ELCRA under the same standards as claims brought under Title VII. *Idemudia v. J.P.*

*Morgan Chase*, 434 F. App'x 495, 499 (6th Cir. 2011) (citation omitted).  A plaintiff

must proffer either direct or circumstantial evidence of discrimination to establish a

*prima facie* case for Title VII or ELCRA national origin discrimination.  Adimulam

offers circumstantial evidence in support of her claim.

      To prove intentional discrimination using indirect or circumstantial evidence,

Adimulam must use the burden-shifting framework established in *McDonnell*

*Douglas* and modified in *Texas Department of Community Affairs v. Burdine*, 450

U.S. 248, 252-53 (1981).[3]  *Idemudia v. J.P. Morgan Chase*, 434 F. App'x 495, 500

(6th Cir. 2011).  A plaintiff first bears the 'not onerous' burden of establishing a

*prima facie* case of discrimination by a preponderance of the evidence.  *Id.* (citations

omitted).  Once a plaintiff establishes a *prima facie* case, there is a presumption of

discrimination.  *Id.*  The burden then shifts to the defendant to rebut the presumption

by providing evidence of a "legitimate, nondiscriminatory reason" for the adverse

action taken.  *Id.* (citation omitted).  Once the defendant has provided a legitimate,

nondiscriminatory explanation, the burden shifts back to the plaintiff to show that

---

[3] Adimulam appears to allege a mixed-motive claim pursuant to 42 U.S.C. § 2000e-2(m).  *See White v. Baxter Healthcare Corp.*, 533 F.3d 381, 396-402 (6th Cir. 2008) (rejecting application of the *McDonnell Douglas/Burdine* framework for single-motive claims to mixed-motive claims).  Adimulam's second Amended Complaint expressly states, "national origin was a factor that made a difference in Defendant's decision to subject her to the wrongful and discriminatory treatment …, in violation of Title VII."  (Doc # 24, Pg. 7, ¶ 48)  In Adimulam's Response to HFHS's Motion for Summary Judgment, she argued under the *McDonnell Douglas* framework applied in single-motive cases.  (see Doc # 32, Pg. 31)  Adimulam's brief explicitly states the Court should apply the *McDonnell Douglas* framework.  Adimulam also argues that the stated reasons for her termination were pretext for the unlawful, discriminatory purpose.

the defendant's stated reasons were pretext for discrimination. *Id.* "Throughout this burden-shifting approach, the plaintiff continues to bear the ultimate burden of proving, by a preponderance of the evidence, the intent to discriminate." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir.2006).

Adimulam may establish a *prima facie* case by showing: (1) she is a member of a protected class; (2) she was terminated; (3) she was qualified for the position; and (4) she was replaced by a person outside of a protected class or was treated differently than a similarly situated, non-protected employee. *Abdulnour v. Campbell Soup Supply Co., LLC*, 502 F.3d 496, 501 (6th Cir. 2007).

Adimulam asserts that (1) she is a member of a protect class as an Indian American; (2) she suffered an adverse employment decision when she was fired; (3) it is undisputed that she is qualified for her former job; (4) and that the facts establish she was treated differently than other employees outside of her protected class. HFHS argues that Adimulam cannot provide evidence to support a prima facie case for national origin discrimination, or that the reasons provided to support her termination were pretext for national origin discrimination. The Court agrees with HFHS.

Adimulam argues it is undisputed that no other pharmacists were terminated for the violations she committed that led to her first suspension and termination. Adimulam has not provided any evidence to support this conclusion. Regarding her

second suspension and termination during May 2016, Adimulam argues that other pharmacists were not disciplined or terminated for engaging in similar conduct. Adimulam notes that pharmacist Jillian Sharfner was not disciplined, and she refused to fill narcotic prescriptions for the patient involved in the Administrative Discharge Patient Complaint. Adimulam adds that other pharmacists routinely refuse to fill prescriptions, call physicians to inquire about prescriptions, and have incorrectly filled patient prescriptions. Adimulam asserts that all of the other employees still work for HFHS.

Adimulam has failed to present evidence she was treated differently from another HFHS employee who committed the same policy infractions stated as the reasons for her termination—specifically, her failure to follow up with the patient who was mistakenly administratively discharged, and her failure to file the appropriate RL report upon request. Adimulam adds that none of the other employees threatened to complain to the DEA or the state authorities, none of them filed a charge of discrimination with the EEOC, and none of them are of Indian national origin. Those facts shed additional light on Adimulam's status with HFHS at the time she was employed, but do not supplement Adimulam's conclusory statements in support of her claim of discrimination based on national origin. Adimulam has not attempted to argue the pretext issue in regards to her claim of national origin discrimination.

HFHS's argument that the Court should construe Adimulam's claim as a claim for discrimination based on skin color is unsupported by the record. There is no evidence that Adimulam attempted to file a claim based on skin color discrimination at any stage in these proceedings. In addition, Adimulam never filed an EEOC claim based on skin color discrimination.

Viewing the facts presented in the light most favorable to Adimulam, there is not a genuine issue of material fact regarding her claim of national origin discrimination against HFHS.

HFHS's Motion for Summary Judgment is **GRANTED** with respect to Adimulam's claims of national origin discrimination under Title VII and the ELCRA.

### 3. *Title VII and the ELCRA Retaliation*

To establish a prima facie case for retaliation against an employer under Title VII and the ELCRA, a plaintiff must establish that (1) she engaged in a protected activity; (2) the employer knew about the activity; (3) the employer took an adverse employment action against the plaintiff; and (4) there was a causal connection between the plaintiff's protected activity and the adverse employment action. *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 469 (6th Cir. 2012).

Title VII prohibits retaliation against an employee "because the person has made a charge, filed a complaint, testified, assisted, or participated in an

investigation, proceeding or hearing under this act." *Barnett v. Department of Veterans Affairs*, 153 F.3d 338 (6th Cir. 1998), *cert. denied*, 525 U.S. 1106 (1999). "'[B]ut for' causation between the protected activity and the adverse employment action is needed." *Beard v. AAA of Michigan*, 593 F. App'x 447, 451 (6th Cir. 2014) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2533 (2013)). "But for" causation is established where "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* Under Michigan law, the "but for" causation standard applied for a retaliation claim under ELCRA is the same as the "but for" standard applied for a retaliation claim under Title VII. *Beard v. AAA of Michigan*, 593 F. App'x 447, 452 (6th Cir. 2014).

Adimulam argues that HFHS's decision to not reinstate Adimulam to her pharmacy coordinator position, and to suspend and terminate her in May 2016 were adverse employment actions taken by HFHS in retaliation for Adimulam making internal complaints of discrimination and filing an EEOC claim against HFHS on January 20, 2016. Neither party disputes that Adimulam engaged in protected activity nor that Adimulam suffered adverse employment action attributable to HFHS. HFHS argues, however, that Adimulam's employment status improved after she filed a claim with the EEOC on January 20, 2016, and that there is not a causal

connection between Adimulam's allegations of discrimination, and her suspension and termination during May 2016.

Adimulam claims that her internal complaints of discrimination and subsequent complaint with the EEOC factored into HFHS's decision not to reinstate Adimulam in her previous role as a Pharmacy Coordinator. The facts, however, do not support that conclusion. Adimulam first reported the alleged internal discrimination during September 2015. Adimulam also admitted to committing several policy violations, and failing to instruct her staff members on the proper work conduct. Those admissions contributed to Adimulam's first suspension and termination.

Adimulam appealed her suspension and termination. At final stage of the appeals process, John Polanski rescinded her termination, and provided Adimulam with another position. Adimulam continued to attempt to clear her name, which compelled her to file a discrimination claim with EEOC on January 20, 2016. Upon learning of Adimulam's EEOC complaint, Polanski decided to revoke her previous suspension and provided her with back pay on February 4, 2016. Adimulam claims her protected activities caused HFHS to take adverse actions against her, but the undisputed facts establish that HFHS took at least some positive actions with respect to Adimulam upon learning of her discrimination claims. Adimulam's discrimination claims may have factored into Polanski's decision to not reinstate

Adimulam to her role as a Pharmacy Coordinator. In light of Adimulam's admitted policy violations she cannot establish that "but for" her claims of discrimination, she would have been reinstated into a leadership role.

HFHS argues there is no causal connection between Adimulam's claims of discrimination and her suspension and termination in May 2016. Adimulam argues the fact that she was suspended and terminated within four months of filing her EEOC charge of discrimination, in light of her eight year career with HFHS, demonstrates that her discrimination claims were clearly a motivating factor in the decision to demote her, and her subsequent termination. Temporal proximity without more "is not enough to create a genuine issue of fact on the but-for-causation element" of a prima facie case of retaliation. *Beard v. AAA of Michigan*, 593 F. App'x 447, 452 (6th Cir. 2014).

The undisputed facts establish that Adimulam committed several HFHS policy violations. The facts also establish that Adimulam received some positive treatment from HFHS following her EEOC claim of discrimination. Viewing the facts in the light most favorable to Adimulam, there are questions of material fact regarding Adimulam's ability to demonstrate a *prima facie* case for unlawful retaliation in violation of Title VII or the ELCRA.

The Court also notes that Adimulam's argument regarding the inconsistencies provided by HFHS in explaining the reasons for her termination raise a genuine issue

of material fact with respect to the pretext inquiry. HFHS's Motion for summary judgment with respect to Adimulam's Title VII and ELCRA retaliation claims is **DENIED**.

### 4. *Intentional Infliction of Emotional Distress*

HFHS also seeks summary judgment on Adimulam's claim for intentional infliction of emotional distress under Michigan common law. Under Michigan law, establishing a case for intentional infliction of emotional distress requires a plaintiff to prove the presence of: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *VanVorous v. Burmeister*, 262 Mich. App. 467, 481 (2004). Adimulam merely states the elements of the claim without providing any factual support. The Court may grant summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an essential element of the claim. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003).

HFHS's Motion for summary judgment with respect to Adimulam's claim for intentional infliction of emotional distress is **GRANTED**.

### III. CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Plaintiff Adimulam's Motion for Partial Summary Judgment (Doc # 28) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant HFHS's Motion for Summary Judgment (Doc # 29) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Defendant HFHS's Motion for Summary Judgment (Doc # 29) with respect to Adimulam's WPA retaliation claim against HFHS is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant HFHS's Motion for Summary Judgment (Doc # 29) with respect to Adimulam's Title VII and ELCRA retaliation claims against HFHS is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant HFHS's Motion for Summary Judgment (Doc # 29) is **GRANTED** with respect to Plaintiff Adimulam's claims of national origin discrimination under Title VII and the ELCRA, and those claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendant HFHS's Motion for Summary Judgment (Doc # 29) is **GRANTED** with respect to Plaintiff Adimulam's claim for intentional infliction of emotional distress, and that claim is **DISMISSED WITH PREJUDICE**.

S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated: August 17, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 17, 2018, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager